# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

KIM AMOS and JACK AMOS,     )
                             )
     Plaintiffs,        )
                             )
     v.                  )      5:22-CV-10
                             )
JAMES C. HODGE and        )
LISA C. HODGE,           )
                             )
     Defendants.        )

## ORDER

This action is before the Court on Defendants' motion for summary judgment, dkt. no. 24, and Plaintiffs' motion for partial summary judgment, dkt. no. 31. For the reasons given below, Defendants' motion is **DENIED**, and Plaintiffs' motion is **DENIED** in part and **GRANTED** in part.

## BACKGROUND

This case arises out of a real property transaction between the parties. Dkt. No. 25 ¶ 1; Dkt. No. 33-2 ¶ 1. In 2021, Kim and Jack Amos ("Plaintiffs") purchased a home ("the Residence) and land in Douglas, Georgia, from James C. Hodge and Lisa C. Hodge ("Defendants"). Dkt. No. 25 ¶ 2; Dkt. No. 33-2 ¶ 2.

In 2002, Defendants had the Residence built. Dkt. No. 29-2 at 12:14-19, 15:13-16:3. One or two years after Defendants moved into

the Residence, they experienced "some leaks," which some contractors repaired. Dkt. No. 29-1 at 13:6-14:8. In 2017, Hurricane Irma hit the area and damaged the Residence's roof, causing leaks in their carport. Dkt. No. 29-1 at 15:13-22. While Defendants were waiting for a roofing company to make repairs, Defendant James Hodge placed towels in the attic floor, "hoping [the water] wouldn't damage the wood." Id. at 17:14-18. Defendant James Hodge believed that there was no lasting damage from these leaks. Id. at 18:22-19:1.

After the hurricane damage, Defendants hired Glen Mercer "to put in some new doorknobs . . . replace . . . fans, and . . . fix[] this little box-looking thing in the carport against the ceiling." Id. at 20:4-9; Dkt. No. 29-2 at 18:5-8. According to Defendant James Hodge, Mr. Mercer built the box to cover old stains—that were not water damage—because painting over them "didn't look right." Dkt. No. 29-1 at 20:7-16. Defendant James Hodge also stated that Mr. Mercer sprayed "leak cover" over old stains caused by storm damage to make "the roof whiter," but he similarly maintained that the stains were not "damage." Id. at 21:23-22:11.

According to Mr. Mercer, Defendants asked him to "go to [their] house and . . . fix some water damage." Dkt. No. 29-3 at 7:20-8:3. When he arrived, he found "water damage where [water] had [blown] in [through] the window" and water damage on "the crown molding." Id. at 8:16-19. He also noted that "[t]he balcony was

leaking," and he "found rot . . . under the carport" and "in the attic." Id. at 8:21–9:7. Mr. Mercer also stated that the attic "was so rotten it was just crumbling." Id. at 9:4–7.

According to Mr. Mercer, Defendants were going to have the balcony "looked at . . . because of the leak." Id. at 9:8–10. They, however, did not want him to do any work on the water damage unrelated to the balcony. Id. at 9:10–11. Instead, "they asked [him] to build a box in the carport to . . . cover [the water damage] up." Id. "[T]hey . . . just said they wasn't [sic] going to do a lot of work to it at the time because they were getting ready to sell it." Id. at 9:11–13.

According to Mr. Mercer, when he asked Defendants whether "the water damage [was] fixed," Defendants stated it was. Id. at 8:19–21, 9:17–18. Mr. Mercer then pointed out all the water-intrusion damage that still needed to be repaired. Id. at 9:19–22 (Q: "Were they . . . aware that there was [sic] issues that needed to be repaired?" A: "Oh, yes, sir. Because, I mean, I pointed 'em out to her."). Mr. Mercer testified that Defendants did not want him to repair the remaining water damage because "they didn't want to spend too much money on it because they were fixing to sell the house." Id. at 10:1–6.

Before Defendants sold the Residence to Plaintiffs, Defendants hired a different contractor who repaired leaks on the back porch soffits. Dkt. No. 29-1 at 22:15–23:16 ("Our back porch

. . . the . . . soffits, they call them . . . was leaking. So I called [the contractor] to repair all that. . . I knew that was leaking, and I wanted everything to be right with the house before we sold it. So he repaired all that."). Defendant James Hodge testified that there was also a "piece of molding [that was] messed up" in the living room, so Defendants "replace[d] the molding" because the contractor "couldn't see any damage to the walls." Id. at 23:20-24:7. Defendants also noticed a "little brown spot on the floor" of the dining room when moving furniture, but they did not investigate further because they believed it was oil from Defendant Lisa Hodge's air freshener. Id. at 26:15-27:12.

Prior to closing, Defendants provided Plaintiffs a "Seller's Property Disclosure Statement" ("SPDS"). Dkt. No. 29-1 at 92-97. The SPDS contained "yes" or "no" questions regarding the condition of the property and provided space for Defendants to write explanations, if necessary. Id. The SPDS inquired: "[i]s there now or has there been any water intrusion in the basement, crawl space or other parts of the dwelling or garage or damage therefrom?" Id. at 93. Defendants indicated "no" on the form and did not provide further explanation. Id.; see also id. at 41:2-6; Dkt. No. 29-2 at 27:11-15, 28:18-22. The SPDS also inquired whether "any repairs [have] been made to control water intrusion in the basement, crawl space, or other parts of any dwelling or garage," to which Defendants also responded "no" and did not provide further

explanation. Dkt. No. 29-1 at 93. However, in response to the question "[h]as any part of the roof been repaired during Seller's ownership," Defendants indicated "yes" on the form and wrote "replaced (Irma)." Id. at 93. In a separate SPDS section, Defendants also wrote that they had repaired the back porch soffit. Id. at 95.

The parties executed a "purchase and sale agreement" ("Agreement"). Id. at 81. The Agreement stated, in relevant part, "Property is being sold subject to a Due Diligence Period of [five] days from the Binding Agreement Date." Id. The Agreement also contained the following terms:

> Upon prior notice to Seller, Buyer and/or Buyer's representatives shall have the right to enter the Property at Buyer's expense and at reasonable times (including immediately prior to closing) to inspect, examine, test, appraise and survey Property. This right to enter shall include the time period after the end of any Due Diligence Period to, among other things, and without limitation, meet with contractors and vendors, measure for renovations and confirm that any agreed upon repairs have been made and the Property otherwise remains in the same condition. . . .

> Unless the Property is being sold subject to a Due Diligence Period referenced herein, the Property shall be sold "as-is" with all faults. Even if the Property is sold "as-is[,]" Seller is required under Georgia law to disclose to the Buyer latent or hidden defects in the Property which [sic] Seller is aware and which could not have been discovered by the Buyer upon a reasonable inspection of the property.

Id. at 83.

Plaintiffs chose not to have the Residence inspected prior to

moving in. Dkt. No. 29-6 at 35:12-14. When Plaintiffs moved in, however, they noticed the dining room floor stain. Id. at 25:1-5. They eventually tore down the dining room wall, discovering extensive water damage. Id. Subsequently, Plaintiffs found more water damage inside and outside of the Residence. Id. at 28:16-30:2; id. at 59-62. Plaintiffs estimate the total cost of repairs due to water damage amounts to over $300,000. Id. at 27:21, 28:7-15. According to Defendants, they "didn't know about all the damage behind walls and stuff" and "had no idea" the damage existed. Dkt. No. 29-1 at 25:3-4; Dkt. No. 29-2 at 25:18-20, 31:6-13, 31:25-32:6 (Defendants explaining that they did not know about any further water damage and that "[e]verything that we were aware of had been fixed over the years").

Plaintiffs then filed this suit. Dkt. No. 1. Defendants answered Plaintiffs' original complaint and asserted a counterclaim for malicious prosecution, seeking attorneys' fees and both compensatory and punitive damages. Dkt. No. 5 ¶¶ 1-5. Thereafter, Plaintiffs filed an amended complaint, alleging "fraud" (Count I), dkt. no. 18 ¶¶ 17-21; "fraud in the inducement/misrepresentation" (Count II), id. ¶¶ 22-27; "fraudulent concealment in the inducement/misrepresentation" (Count III), id. ¶¶ 28-31; breach of contract (Count IV), id. ¶¶ 32-35; and "in the alternative" negligent misrepresentation (Count V), id. ¶¶ 36-39. Plaintiffs seek compensatory damages, as

well as punitive damages under O.C.G.A. Section 51-12-51-1. <u>Id.</u> ¶¶ 41-42. Plaintiffs also seek attorneys' fees and expenses of litigation under O.C.G.A. Sections 13-6-11, 9-15-14, "and any other applicable code section." <u>Id.</u> ¶¶ 43-44. Defendants filed a counterclaim for malicious prosecution, seeking attorneys' fees and both compensatory and punitive damages. Dkt. No. 5 ¶¶ 1-5.

Defendants now move for summary judgment as to all Plaintiffs' claims. Dkt. No. 24. Plaintiffs move for summary judgment as to liability and Defendants' counterclaim. Dkt. No. 31.

## LEGAL STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" where the evidence would allow "a reasonable jury to return a verdict for the nonmoving party." <u>FindWhat Inv. Grp. v. FindWhat.com</u>, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). A fact is "material" only if it "might affect the outcome of the suit under the governing law." <u>Id.</u> (quoting <u>Anderson</u>, 477 U.S. at 248). When ruling on cross-motions for summary judgment, the Court will view the facts "in the light most favorable to the non-moving party on each motion." <u>James River Ins. Co. v. Ultratec Special Effects Inc.</u>, 22 F.4th 1246, 1251 (11th Cir. 2022) (citing

<u>Chavez v. Mercantil Commercebank, N.A.</u>, 701 F.3d 896, 899 (11th Cir. 2012)).

As to each motion, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). The movant must show the Court that there is an absence of evidence to support the nonmoving party's case. <u>See</u> <u>id.</u> at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. <u>See</u> <u>Anderson</u>, 477 U.S. at 257.

The nonmovant may satisfy this burden in one of two ways. First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting <u>Celotex Corp.</u>, 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." <u>Id.</u> at 1117.

**DISCUSSION**

**I.   Defendants' motion for summary judgment**

Defendants seek summary judgment as to all Plaintiffs' claims. Dkt. No. 24. For the following reasons, the motion is **DENIED**.

**a. Fraud**

Defendants argue that Plaintiffs' fraud claim fails because Plaintiffs cannot show that (1) Defendants' statements regarding water intrusion were false at the time they made them, (2) Defendants knew that the statements were false, and (3) Defendants made the statements with the intent to deceive Plaintiffs. Dkt. No. 24 at 5. Plaintiffs, however, present sufficient evidence to create genuine disputes of material fact as to each of the essential elements of fraud. Thus, Defendants' motion for summary judgment, dkt. no. 24, is **DENIED** as to Plaintiffs' fraud claim.

A fraud claim requires "(1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages." Lehman v. Keller, 677 S.E.2d 415, 417–18 (Ga. Ct. App. 2009) (quoting Meyer v. Waite, 606 S.E.2d 16, 20 (Ga. Ct. App. 2004)). There are different categories of real estate fraud, but each involve "concealment of a material fact." Fann v.

<u>Mills</u>, 546 S.E.2d 853, 858 (Ga. Ct. App. 2001).[1] To prevail on a fraud claim, "there must be some evidence that the defendants had actual knowledge of the concealed fact"—but since "fraud is inherently subtle," a plaintiff "may survive summary judgment if there is slight, circumstantial evidence of such knowledge." <u>Id.</u> (quoting <u>Quill v. Newberry</u>, 518 S.E.2d 189, 193 (Ga. Ct. App. 1999)).

### i. False representations or omissions of material fact

Plaintiffs allege that Defendants misrepresented and omitted the true state of the Residence by claiming there was no past or current water damage at the time of the sale. Dkt. No. 33-1 at 13. To support their claim, Plaintiffs point to the SPDS, where Defendants answered "no" when asked whether there was or ever had been "water intrusion in the basement, crawl space, or other parts of any dwelling." <u>Id.</u> at 11. This is sufficient evidence of a false representation or omission to create a genuine issue of fact as to this element.

---

[1] Neither party specifies which type of fraud is at issue—passive, active, or willful. <u>Spies v. DeLoach Brokerage, Inc.</u>, 169 F. Supp. 3d 1365, 1374 (S.D. Ga. 2016); Dkt. No. 24 at 3; Dkt. No. 33-1 at 10. Plaintiffs' allegations, however, implicate willful misrepresentation or active concealment, rather than passive concealment, because they allege Defendants falsely represented facts on the SPDS and covered-up water intrusion. Dkt. No. 33-1 at 11.

### ii. Knowledge

Defendants argue that Plaintiffs "fail[ed] to show that Defendants knew [their statements about the Residence's water damage] were false at the time they allegedly made them." Dkt. No. 24 at 5. Instead, Defendants testified that they were unaware of the water damage behind the walls when they made statements about the Residence to Plaintiffs. Dkt. No. 29-1 at 25:3-4; Dkt. No. 29-2 at 31:6-10. However, genuine disputes of material fact exist regarding Defendants' knowledge of this damage.

### 1. Past water intrusion and repairs

Defendants testified that, "one or two, maybe three years after [they] moved" into the Residence, they experienced water intrusion and leaks, which they repaired. Dkt. No. 29-1 at 13:12-14:16; Dkt. No. 29-2 at 16:4-10 ("There was some leaks that [the repairman] came back and addressed."). Defendants also testified Hurricane Irma damaged their roof and caused more leaks and water intrusion, which they also repaired. Dkt. No. 29-1 at 15:13-25, 17:21-18:1 ("The roof was leaking . . . in the carport area."); Dkt. No. 29-2 at 16:22-17:2 ("[The hurricane] messed up our roof pretty bad . . . leaks were associated with that."). As a result, the evidence indicates that Defendants had knowledge about previous water intrusion and repairs made to fix the intrusion.

Thus, Defendant knew that their SPDS answers that there had not "ever been any water intrusion" in the Residence nor "any

repairs . . . made to control water intrusion" were false. Dkt. No. 29-2 at 93. Defendants admit this in their testimony. Dkt. No. 29-1 at 41:2-20; Dkt. No. 29-2 at 27:11-20, 58:12-14. As a result, Plaintiffs present sufficient evidence that Defendants had knowledge of past water intrusion and repairs to sustain claims for fraud and negligent misrepresentation.

### 2. Current water intrusion

There is also evidence showing that Defendants were aware of the water intrusion that existed at the time of sale. Mr. Mercer, Defendants' repairman, testified that Defendants were aware water intrusion persisted after the Hurricane Irma repairs because he "pointed [the issues] out to [Defendant Lisa Hodge]." Dkt. No. 29-3 at 9:19-22. According to Mr. Mercer, he informed Defendants about water damage he observed when he examined the Residence's attic and saw that "it was so rotten that it was crumbling." Id. at 9:2-7. Mr. Mercer further stated that, when he informed Defendants of this damage, Defendants did not want him to fix the issues because they were preparing to sell the Residence. Id. at 10:1-6. Rather than fixing the water damage, Mr. Mercer testified that Defendants asked him "to build a box in the carport to . . . cover [the visible water damage] up." Id. at 9:10-11; see also Dkt. No. 33-1 at 4-5 (photograph of the box Mr. Mercer built for Defendants). Thus, according to Mr. Mercer, Defendants knew about the water intrusion at the time of sale because he directly told them about

continuing water intrusion and unrepaired water damage and Defendants elected not to repair it.

In contrast, Defendant James Hodge testified that Mr. Mercer built the box to cover old stains that were not wet anymore because painting them "didn't look right." Dkt. No. 29-1 at 20:7-16. Defendants also testified that they believed they fixed all Hurricane-Irma water intrusion issues, as well as the other leaks their contractor found on their porch soffit. Dkt. No. 29-1 at 25:3-4; Dkt. No. 29-2 at 25:18-20, 31:6-13, 31:25-32:6. Mr. Mercer and Defendant James Hodges' differing testimonies create a genuine dispute of material fact as to Defendants' knowledge of water intrusion existing at the time of sale.

In sum, Plaintiffs have presented sufficient evidence to create a genuine dispute of material fact regarding whether Defendants knew about past and current water intrusion on the Residence at the time of sale.

### iii. Scienter and intention to induce

To present a prima facie case of fraud, a plaintiff must also present evidence of a defendant's "scienter" and "intention to induce the party claiming fraud to act or refrain from acting." Lehman, 677 S.E.2d at 417-18. Defendants argue that they did not make false statements about the Residence's water damage "with the intent of deceiving Plaintiffs because[] Defendants believed these statements to be true." Dkt. No. 24 at 5. In contrast, Plaintiffs

argue that "the length of time of the water intrusion and the fact [that] Defendants even admit to acts such as placing towels in the attic to absorb leaking water" suggest their intention to induce the Plaintiffs. Dkt. No. 33-1 at 13 (citing Dkt. No. 29-1 at 41:2-11, 119-121).

The same facts that implicate Defendants' knowledge of the Residence's water damage also implicate Defendants' scienter and intention to induce. See GIW Indus., Inc. v. JerPeg Contracting, Inc., 530 F. Supp. 2d 1323, 1336-37 (S.D. Ga. 2008) ("[S]cienter is 'peculiarly' a jury issue [because] it deals with the choice of what to believe regarding a subjective state of mind seldom capable of direct proof."). Mr. Mercer's testimony indicates Defendants' scienter to conceal the water intrusion. Dkt. No. 29-3 at 7:20-10:6. According to Mr. Mercer, Defendants had him make a box to cover water damage and declined to fix the other water intrusion because "they didn't want to spend too much money on it because they were fixing to sell the house." Id. at 10:3-5. If the jury were to believe Mr. Mercer's testimony, Defendants' answers to the SPDS, dkt. no. 29-2 at 93, also indicate Defendants' intention to induce Plaintiffs by affirmatively misrepresenting the Residence's true state, thus making it look more attractive to potential buyers.

This inference is further bolstered by the realtor's testimony. As the parties' realtor testified, buyers are expected

"to rely on [the] disclosure statement when they're purchasing property" and only about half of buyers have their houses inspected prior to closing. Dkt. No. 29-4 at 10:22-24, 12:5-12. Therefore, Plaintiffs present sufficient evidence to create a genuine dispute of material fact as to Defendants' scienter and intention to induce.

### iv. Justifiable reliance

Finally, a fraud claim also requires a plaintiff's justifiable reliance. Lehman, 677 S.E.2d at 417. A buyer may reasonably rely on a seller's material representations when making a purchase absent disclaimer. See, e.g., Stephen A. Wheat Tr. v. Sparks, 754 S.E.2d 640, 645 (Ga. Ct. App. 2014) (holding that a jury question remained as to whether the plaintiff reasonably relied on an SPDS where the defendant sellers failed to disclose encroachment of a sewer lateral on the SPDS). However, a plaintiff may not establish justifiable reliance absent evidence that she exercised due diligence. Lehman, 677 S.E.2d at 417.

While Defendants note that Plaintiffs must show due diligence to prove justifiable reliance, they also admit that Plaintiffs are "not bound to exhaust all means at [their] command to ascertain the truth before relying upon the representations." Dkt. No. 24 at 4 (first citing Nebo Ventures, LLC v. NovaPro Risk Sols., L.P., 752 S.E.2d 18, 24 (Ga. Ct. App. 2013) (internal quotation marks omitted); and then citing Consulting Const. Corp. v. Edwards, 427

S.E.2d 789, 790 (Ga. Ct. App. 1993)). Still, Defendants argue that Plaintiffs fail to carry their burden because they did not inspect the Residence. Id. at 5.

Plaintiffs respond that, in purchasing the Residence, they reasonably relied on the SPDS. Dkt. 33-1 at 14. They note that the realtor for both parties stated that buyers are expected "to rely on this disclosure statement when they're purchasing property." Dkt. No. 29-4 at 10:22-24; see also Dkt. No. 33-1 at 14. Plaintiffs also argue that they were not required to have the Residence inspected, and in fact, "only about 50% of homes [the realtor] sells, almost all of which are in Coffee County, are inspected by a home inspector." Dkt. No. 33-1 at 16 (citing Dkt. No. 29-4 at 12:5-12).

Plaintiffs also rely on Salinas v. Skelton, 547 S.E.2d 289, 293 (Ga. Ct. App. 2001), a case where a buyer discovered asbestos in her residence after purchase, to support their argument. In Salinas, the buyer "did not hire a building inspector," believing that "new homes do not require an inspection." Id. at 291. The sellers had executed an SPDS, but they "had failed to answer the question concerning the presence of asbestos on the property." Id. The plaintiff, however, failed to review the SPDS until after she discovered the asbestos. Id. The court found an issue of fact regarding the buyer's due diligence because "there [was] evidence that [the buyer] could not have discovered the asbestos by the

exercise of due diligence" as it was hidden behind a wall and the sellers did "not establish[] that an inspector would have broken through the wall to test the boiler insulation for asbestos." <u>Id.</u> at 293. That the seller failed to read the SPDS until she discovered the asbestos was "without consequence" because the court could not "say as a matter of law that further inquiry would have informed her that the boiler was insulated with asbestos." <u>Id.</u>

The <u>Salinas</u> case is instructive. Drawing inferences in favor of Plaintiffs, Defendants, like the <u>Salinas</u> seller, were aware of a latent defect which the buyer did not discover until after the purchase. Dkt. No. 29-6 at 25:1-30:2. Like the <u>Salinas</u> buyer, Plaintiffs did not hire an inspector. <u>Id.</u> at 35:12-14. Furthermore, like the <u>Salinas</u> sellers, Defendants failed to disclose water intrusion and repairs. Dkt. No. 29-2 at 93. Although Defendants disclosed that they had repaired the roof due to Hurricane Irma, <u>id.</u>, a question of fact remains as to whether this would put Plaintiffs on notice of possible water intrusion damage, especially considering Defendants' "no" answers to the SPDS water intrusion questions. Finally, Defendants also have not offered evidence demonstrating that an inspector would have discovered the damage. So, as in <u>Salinas</u>, the Court cannot "say as a matter of law that further inquiry would have informed" Plaintiffs about the water intrusion in the Residence. <u>Salinas</u>, 547 S.E.2d at 293.

As in Salinas, because (i) Defendants failed to disclose a latent defect, (ii) Defendants have presented no evidence that an inspector or other further inquiry would have led to discovery of the damage as a matter of law, and (iii) there is a question of fact regarding whether the SPDS placed Plaintiffs on notice that the house might contain water intrusion damage, Plaintiffs' failure to obtain an inspection prior to closing creates an issue of fact regarding their due diligence.

Moreover, Plaintiffs' evidence of due diligence is arguably stronger in this case than the plaintiff's evidence in Salinas. Here, Defendants admit that they inaccurately filled out the SPDS, dkt. no. 29-1 at 41:2-20, dkt. no. 29-2 at 27:11-20, 57:21-60:15, and Plaintiffs assert that they relied on it, dkt. no. 33-4 ¶ 6, dkt. no. 33-5 ¶ 6, while the Salinas plaintiff did not review the SPDS until after she discovered the asbestos. Additionally, the realtor's testimony further supports that, in not inspecting the Residence, Plaintiffs did not act *without* due diligence. Dkt. No. 29-4 at 10:22-24, 12:5-12 (the parties' realtor stating that she expects buyers to rely on disclosure statements when they purchase property and that "a lot of people do, [and] a lot of people don't" rely on the disclosure statements).

Bearing in mind that "the question of whether a purchaser has exercised reasonable diligence in inspecting real property is usually" reserved for the jury, Plaintiffs' evidence creates a

genuine dispute of material fact as to due diligence and—by extension—justifiable reliance. Napier v. Kearney, 855 S.E.2d 78, 82 (Ga. Ct. App. 2021) (quoting Akins v. Couch, 518 S.E.2d 674, 676 (Ga. 1999)). Because Plaintiffs have presented enough evidence to create disputes of material fact as to all the essential elements of their fraud claim, Defendants' motion for summary judgment, dkt. no. 24, is **DENIED** as to that claim.

### b. Negligent misrepresentation

To present a claim for negligent misrepresentation, a plaintiff must show: "(1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." Freebirds LLC v. Coca-Cola Co., 883 S.E.2d 388, 392-93 (Ga. Ct. App. 2023) (quoting DaimlerChrysler Motors Co. v. Clemente, 668 S.E.2d 737, 749 (Ga. Ct. App. 2008)). "[T]he same principles apply to both fraud and negligent misrepresentation cases and the only real distinction between negligent misrepresentation and fraud is the absence of the element of knowledge of the falsity of the information disclosed." Davis v. Greensboro Ests., LLC, 883 S.E.2d 63, 70 (Ga. Ct. App. 2023) (alterations accepted) (quoting Holmes v. Grubman, 691 S.E.2d 196, 200 (Ga. 2010)).

Drawing inferences in favor of Plaintiffs, Defendants negligently supplied Plaintiffs with false information because

Defendants knew about the past and present water intrusion and failed to disclose it. Dkt. No. 29-3 at 7:20-10:6 (Mr. Mercer's testimony); Dkt. No. 29-2 at 92-97 (SPDS). Additionally, for the reasons discussed related to justifiable reliance, supra pp. 15-19, an issue of fact exists as to Plaintiffs' reasonable reliance. Lastly, Plaintiffs testified that they have incurred substantial damages due to the water intrusion, and an issue of fact exists as to whether this injury was proximately caused by Defendants' failure to disclose past or present water intrusion. Dkt. No. 29-6 at 39:20-40:16.; Dkt. No. 33-4 ¶ 11; Dkt. No. 33-5 ¶ 11; see also Dkt. No. 41 (order denying motion to exclude expert testimony as to whether the Residence suffered from long-term water intrusion and the duration of the water intrusion). Therefore, Defendants' motion for summary judgment, dkt. no. 24, is **DENIED** as to negligent misrepresentation.

### c. Breach of Contract

Defendants do not address the merits of Plaintiffs' breach of contract claim in their motion. As with Plaintiffs' fraud claims, Defendants' admission that their SPDS answers were false and Mr. Mercer's testimony that Defendants knew about prior water damage and asked him to conceal it, at the least, create a genuine issue of material fact as to Plaintiffs' breach of contract claim. Dkt. No. 29-1 at 41:2-20; Dkt. No. 29-2 at 27:11-20, 58:12-14; Dkt. No. 29-3 at 9:2-10:6. As a result, Defendants' motion for summary

judgment, dkt. no. 24, is **DENIED** as to Plaintiffs' breach of contract claim.

### d. Punitive damages

Plaintiffs seek punitive damages pursuant to O.C.G.A. Section 51-12-5.1. Dkt. No. 18 ¶ 42. O.C.G.A. Section 51-12-5.1(b) provides, "[p]unitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." "Punitive damages under [O.C.G.A. Section 51-12-5.1] . . . are not recoverable for breach of contract actions." Taylor v. Powertel, Inc., 551 S.E.2d 765, 768 (Ga. Ct. App. 2001). "However, if the breach of contract would also constitute a breach of a public duty as an intentional tort or such entire want of care, which would raise the presumption of conscious indifference to consequences, then punitive damages may be recovered as tort, not contract damages." Id. Here, Plaintiffs assert both the intentional tort of fraud and breach of contract. Dkt. No. 18 ¶¶ 17–35. Thus, damages "may be recovered as tort, not contract damages," Taylor, 551 S.E.2d at 768, provided Plaintiffs demonstrate the requisite specific intent by "clear and convincing evidence," O.C.G.A. § 51-12-5.1(b).

Clear and convincing evidence "is 'an intermediate standard of proof, requiring a higher minimum level of proof than the preponderance of the evidence standard, but less than that required for proof beyond a reasonable doubt.'" Jones v. Bebee, 839 S.E.2d 189, 192 (Ga. Ct. App. 2020) (first quoting Ga. Clinic, P.C. v. Stout, 747 S.E.2d 83, 88 (Ga. Ct. App. 2013); and then citing Clarke v. Cotton, 440 S.E.2d 165, 167 n.1 (Ga. 1994)).

Defendants argue they are entitled to summary judgment as to Plaintiffs' punitive damages claims because "[d]espite extensive discovery, there is not a scintilla of evidence to support a claim for intentional acts with specific intent to cause harm to warrant a claim for punitive damages." Dkt. No. 24 at 7. This is incorrect. Mr. Mercer's testimony, if believed, would support a conclusion that Defendants acted willfully. According to Mr. Mercer, Defendants knew about past water intrusion damage, paid Mr. Mercer to cover up some water damage by building a box in the carport, and did not want Mr. Mercer to repair the remaining damage because "they didn't want to spend too much money on [the Residence] because they were fixing to sell [it]." Dkt No. 29-3 at 7:20–10:6. Drawing inferences in favor of Plaintiffs, if the jury were to believe Mr. Mercer and disbelieve Defendants, Mr. Mercer's testimony could amount to clear and convincing evidence justifying punitive damages. Thus, Defendants' motion for summary judgment, dkt. no. 24, is **DENIED** as to Plaintiffs' claim for punitive

damages. In sum, the Court **DENIES** Defendants' motion for summary judgment, dkt. no. 24, as to all Plaintiffs' claims.

## II.  Plaintiffs' motion for partial summary judgment

Plaintiffs move for partial summary judgment as to (1) Defendants' liability for their fraud and negligent misrepresentation claims and (2) Defendants' malicious-prosecution counterclaim. Dkt. No. 31-1. For the following reasons, Plaintiffs motion is **DENIED** as to Defendants' liability for Plaintiffs' fraud and negligent misrepresentation claims and **GRANTED** as to Defendants' malicious prosecution claim.

### a. Liability for negligent misrepresentation or fraud

Plaintiffs urge the Court to grant partial summary judgment as to Defendants' liability for Plaintiffs' negligent misrepresentation and fraud claims. Dkt. No. 31-1. Defendants argue that contractual provisions within the Purchase and Sale Agreement foreclose liability and that Plaintiffs' claims fail on the merits. Dkt. No. 36 at 4, 11.

### i. The Agreement's provisions

Defendants correctly note that by electing to affirm the Agreement, Plaintiffs are bound by its terms. Dkt. No. 36 at 3 (first citing <u>Mitchell v. Head</u>, 394 S.E.2d 114, 116 (Ga. Ct. App. 1990); then citing <u>Weaver v. ABC Bus, Inc.</u>, 382 S.E.2d 380, 381 (Ga. Ct. App. 1989); and then citing <u>Am. Demolition v. Hapeville Hotel Ltd. P'ship</u>, 413 S.E.2d 749, 752 (Ga. Ct. App. 1991)). Thus,

Defendants argue, the due diligence and "as is" Agreement provisions "apply to Plaintiff's [sic] claims." Id. at 2–4. To the extent Defendants argue that these provisions bar Plaintiffs' claims, their argument fails.

The "as is" provision states, "[u]nless the [Residence] is being sold subject to a Due Diligence Period referenced herein, the [Residence] shall be sold 'as-is' with all faults." Dkt. No. 29-1 at 83. However, the Residence was sold subject to a due diligence period. Id. at 81 ("Property is being sold subject to a Due Diligence Period of [five] days from the Binding Agreement Date."). Thus, the Residence was not sold "as is." Even if it was, the "as is" provision further states: "[e]ven if the Property is sold 'as-is[,]' Seller is required under Georgia law to disclose to the Buyer latent or hidden defects in the Property which Seller is aware and which could not have been discovered by the Buyer upon a reasonable inspection of the property." Id. Plaintiffs allege that Defendants failed to disclose water intrusion, a latent defect. See generally Dkt. No. 18.

The due diligence provision is relevant to Plaintiffs' claims in that it bears on Plaintiffs' justifiable or reasonable reliance, but it does not mean as a matter of law that Plaintiffs failed to exercise due diligence by failing to hire an inspector, as discussed below. Therefore, the Agreement's terms do not prohibit

Plaintiffs from bringing their claims, and the Court will next examine the merits of the claims themselves.

### ii.  **The merits of Plaintiffs' claims**

In support of their motion for summary judgment, Plaintiffs note that "Defendants have admitted their seller disclosure statements contained false and incorrect information." Dkt. No. 31-1 at 1–2, 6, 10. Plaintiffs argue that they, in turn, relied upon this information and failed to discover latent water intrusion. Id. Defendants respond that they "have repeatedly stated they were unaware of any water intrusion at the time of sale" and "[t]hey accurately stated on the [SPDS] the roof was replaced in 2018 as a result of damage from Hurricane Irma." Dkt. No. 36 at 11.

Although the parties do not concentrate on it in their briefs, the Court notes that the SPDS referred to both *past* and *present* water intrusion and repairs. Dkt. No. 29-1 at 93. As to past water intrusion and repairs, there is no dispute that Defendants provided a "false representation" or "negligent[ly] suppl[ied] false information" to Plaintiffs, who are "foreseeable persons." Freebirds LLC, 883 S.E.2d at 392–93 (quoting Clemente, 668 S.E.2d at 749). The other elements of liability for past water intrusion and repairs, however, face genuine disputes of material fact to be resolved by a jury. As to present water intrusion, genuine disputes of material fact exist as to each element of liability. Thus,

Plaintiffs' motion for partial summary judgment as to liability is **DENIED**.

### 1. Past water intrusion

While there is no dispute of material fact as to the first elements of fraud and negligent misrepresentation for past water intrusion, disputes exist as to the remaining elements of the two claims.

> [T]o prove fraud, the plaintiff must establish five elements: [1] a false representation by a defendant, [2] scienter, [3] intention to induce the plaintiff to act or refrain from acting, [4] justifiable reliance by plaintiff, and [5] damage to plaintiff. In turn, the essential elements of negligent misrepresentation are: (1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance.

Id. (alterations in original).

As mentioned, Georgia courts recognize that "the same principles apply to both fraud and negligent misrepresentation cases and the only real distinction between negligent misrepresentation and fraud is the absence of the element of knowledge of the falsity of the information disclosed." Davis, 883 S.E.2d at 70 (alterations accepted) (quoting Holmes, 691 S.E.2d at 200).

Here, Defendants admit that their SPDS included a "false representation" or "false information." Freebirds LLC, 883 S.E.2d at 392–93 (quoting Clemente, 668 S.E.2d at 749). As discussed,

Defendants admitted they falsely represented that there had not been any water intrusion in the Residence nor repairs due to water intrusion. Dkt. No. 29-1 at 41:2-20 (Defendant James Hodge testifying that he "should have" answered "yes" to the SPDS water intrusion question and acknowledging that Defendants repaired the roof because of water intrusion); Dkt. No. 29-2 at 27:11-20, 57:21-60:15 (Defendant Lisa Hodge testifying that the answer to the SPDS water intrusion question "should've been" yes and that she answered the water-intrusion-repair question "incorrectly").

Defendants argue that they informed Plaintiffs of past water damage and repairs because "[t]hey adequately informed Plaintiffs of prior roof damage, due to Hurricane Irma, and repairs." Dkt. No. 36 at 4. However, that Defendants disclosed the roof was "replaced (Irma)" in the SPDS's "ROOFS, GUTTERS, and DOWNSPOUTS" section does not negate that they falsely answered the water intrusion and repairs questions in the "FLOODING, DRAINING, MOISTURE, and SPRINGS" section. Dkt. No. 29-1 at 93. The "replaced (Irma)" disclosure could implicate whether Plaintiffs' *reliance* on Defendants' SPDS water intrusion answers was reasonable or whether Plaintiffs exercised sufficient due diligence, but it does not change the undisputed falsity of Defendants' answers.

Defendants' false water-intrusion SPDS answers, at the least, amount to negligence. Defendants admit that they "should have" answered the questions differently, dkt. no. 29-1 at 41:2-20, dkt.

no. 29-2 at 27:11-20, 57:21-60:15, and Defendant Lisa Hodge stated that she "should have read [the SPDS] more carefully." Dkt. No. 29-2 at 58:12-14. The realtor for both parties testified that she "rel[ies] on people to be truthful" when they fill out an SPDS and that she "expects buyers to rely on [SPDS] when they're purchasing property." Dkt. No. 29-4 at 9:21-24; Id. at 10:22-24. This evidence indicates that Defendants did not act with the level of care of an ordinarily prudent person when filling out the SPDS. None of Defendants' evidence points to the contrary. Thus, there is no dispute of fact as to the first element of fraud, "false representation by a defendant," or negligent misrepresentation, "defendants' negligent supply of false information to foreseeable persons."[2] Freebirds LLC, 883 S.E.2d at 392-93 (quoting Clemente, 668 S.E.2d at 749).

However, disputes of material fact exist as to the remaining elements of fraud and negligent misrepresentation as to past water intrusion and repairs. Plaintiffs argue that, because Defendants presented false answers on the SPDS, "the only real question that remains for a jury to decide as to the liability question is under which theory should Defendants be held liable." Dkt. No. 31-1 at 14. This argument overlooks another element of both fraud and

---

[2] Plaintiffs, as the buyers and intended recipients of the SPDS, are "foreseeable persons." Freebirds LLC, 883 S.E.2d at 392-93 (quoting Clemente, 668 S.E.2d at 749. Defendants do not dispute this. See generally Dkt. No. 36.

negligent misrepresentation claims: "justifiable" or "reasonable" reliance. Freebirds LLC, 883 S.E.2d at 392-93 (quoting Clemente, 668 S.E.2d at 749) (stating that a plaintiff must establish "justifiable reliance" for a fraud claim and "reasonable reliance" for a negligent misrepresentation claim).

"[T]he question of whether a purchaser has exercised reasonable diligence in inspecting real property," see supra p. 19, "is usually a jury question." Napier, 855 S.E.2d at 82 (quoting Akins, 518 S.E.2d at 278). Drawing inferences in favor of Defendants, as the Court must when evaluating Plaintiffs' motion, Defendants have presented sufficient evidence that Plaintiffs failed to act with due diligence to survive summary judgment on this issue.

Here, Defendants indicated on the SPDS that they had replaced the Residence's roof due to Hurricane Irma and that the back porch soffit was repaired. Dkt. No. 29-1 at 93, 95. Despite the five-day due diligence period and Plaintiffs' contractual right to inspect the property, dkt. no. 29-1 at 81, Plaintiffs did not inquire further about the Hurricane Irma roof damage or conduct an inspection of the Residence, dkt. no. 29-6 at 35:12-36:6; see also dkt. no. 33-4 ¶¶ 6, 9 (Plaintiff Kim Amos's declaration that she "relied on the sellers' property disclosure statements" and, had she known about the water intrusion, she would have "inquired of the exact locations of any water intrusion, examined those areas

[herself,] and had a contractor inspect the property"); dkt. no.
33-5 ¶¶ 6, 9 (Plaintiff Jack Amos declaring the same). Drawing
inferences in favor of Defendants, a reasonable jury could conclude
that Plaintiffs failed to exercise due diligence. A reasonable
jury could also conclude the contrary. See supra pp. 15–19.
Whether Plaintiffs should have inquired further about the
disclosed roof-repair or whether and to what extent the past water
intrusion damage could have been discovered by Plaintiffs upon an
inspection are questions that remain for the jury. Therefore,
Plaintiffs' motion for partial summary judgment as to liability
for fraud and negligent misrepresentation, dkt. no. 33 is **DENIED**
as to past water intrusion damage and repairs.

### 2. Current water intrusion

According to Defendants, they believed all water intrusion
issues were solved by the roof repair following Hurricane Irma and
had no reason to believe that any issues or damage remained at the
time of sale. Dkt. No. 29-1 at 15:13–20:1, 41:2–20; Dkt. No. 29-2
at 16:11–17:16, 57:21–58:14. Defendants maintain that Mr. Mercer's
work was unrelated to any water intrusion issues. Dkt. No. 29-1 at
20:4–22:10; Dkt. No. 29-2 at 18:5–8. Moreover, when Defendants
discovered a leak prior to sale, Defendant James Hodge disclosed
it to Plaintiffs and had repairs done. Dkt. No. 29-1 at 45:3–

46:11.[3] Their testimony thus creates a genuine dispute as to fraud's first three elements—a false representation by a defendant, scienter, and intention to induce the plaintiff to act.

Moreover, Plaintiffs cannot obtain summary judgment as to liability for fraud absent evidence of knowledge, which they concede is subject to a dispute of material fact. Dkt. No. 31-1 at 12; Fann, 546 S.E.2d at 858 ("In all cases of fraud involving concealment of a material fact, there must be some evidence that the defendants had actual knowledge of the concealed fact."); Tabor v. Orkin Exterminating Co., 360 S.E.2d 34, 37 (Ga. Ct. App. 1987) ("[T]he alleged[ly] defrauded party must show that the alleged defrauder had actual, not merely constructive, knowledge.'" (quoting Butler v. Terminix Int'l, Inc., 334 S.E.2d 865, 867 (Ga. Ct. App. 1985))).

Crediting Defendants' testimony, a jury could find Defendants' failure to discover and disclose current water intrusion does not amount to "negligent supply of false information." Freebirds LLC, 883 S.E.2d at 392-93 (quoting Clemente, 668 S.E.2d at 749). According to Defendants' testimony, they believed they had repaired the water intrusion issues and they did not know and had no reason to know that other water

---

[3] Defendant James Hodge testified that he could not remember whether he disclosed the leak before or after the house was sold, but, drawing inferences in favor of Defendants, he told Plaintiffs about the leak before sale. Id.

intrusion damage existed. Dkt. No. 29-1 at 15:13-20:1, 41:2-20;
Dkt. No. 29-2 at 16:11-17:16, 57:21-58:14. Further, they disclosed
and repaired the one leak they discovered to Plaintiffs.[4] Dkt. No.
29-1 at 45:3-46:11. Thus, Defendants' testimony creates a genuine
issue of material fact as to the first element of negligent
misrepresentation, "the defendant's negligent supply of false
information to foreseeable persons, known or unknown." Freebirds
LLC, 883 S.E.2d at 392-93 (quoting Clemente, 668 S.E.2d at 749).

Moreover, as with past water intrusion damage and repairs,
issues of fact exist as to whether Plaintiffs justifiably or
reasonably relied upon the SPDS. See supra pp. 29-31. Plaintiffs
did not hire an inspector, and they did not inquire further when
Defendants told them about the leak they discovered or when
Defendants mentioned the roof and soffit repairs on the SPDS. Dkt.
No. 29-6 at 35:12-36:6; Dkt. No. 33-4 ¶¶ 6, 9; Dkt. No. 33-5 ¶¶ 6,
9. Thus, Plaintiffs' motion for partial summary judgment as to
liability for fraud and negligent misrepresentation, dkt. no. 31-
1, is also **DENIED** as to current water intrusion damage.

### b. Counterclaim

Plaintiffs also seek summary judgment as to Defendants'
counterclaim for abusive litigation. See generally Dkt. No. 31-1.

---

[4] Defendants' testimony also creates issues of fact as to fraud
for the elements of "scienter" and "intention to induce." Freebirds
LLC, 883 S.E.2d at 392-93 (quoting Clemente, 668 S.E.2d at 749).

Plaintiffs argue that the "counterclaim is without merit based on the admissions of Defendants as to their failure to disclose known water intrusion at the property." Id. at 2. Defendants do not specify under what authority they bring their counterclaim, dkt. no. 5 at 11–12,[5] and neither party analyzes this claim in detail, see generally dkt. nos. 5, 31-1, 36.

The counterclaim merits dismissal regardless of the authority under which Defendants assert it. If the Court guesses that Defendants assert the counterclaim under O.C.G.A. Section 51-7-81, their claim must be dismissed because: (1) "Georgia's abusive litigation statute does not apply to lawsuits in federal court," Dombrowsky v. Patricia, No. 1:11-CV-3048-MHS, 2012 WL 12873617, at *5 (N.D. Ga. July 31, 2012) (citing Great W. Bank v. Se. Bank, 507 S.E. 191, 191–93 (Ga. Ct. App. 1998));(2) "Defendants could not state a counterclaim for abusive litigation in any event because O.C.G.A. [Section] 51-7-84(b) requires that such a claim follow termination of the proceeding in which the abuse occurred," id.; and (3) there is no evidence that Plaintiffs acted "[w]ith malice" or "[w]ithout substantial justification" because Plaintiffs present sufficient evidence to create genuine disputes of material fact as to each element of their claims, O.C.G.A. § 51-7-81.

---

[5] The fact that at this late juncture the basis for the counterclaim remains unclear is in and of itself problematic to its survival.

If, instead, Defendants meant to bring their counterclaim pursuant to Rule 11(c), it also must be dismissed because: (1) Defendants did not follow Rule 11(c)(2)'s procedural requirements;[6] and (2) no evidence indicates that Plaintiff's conduct violates Rule 11(b) because Plaintiffs present sufficient evidence to create genuine disputes of material fact as to each element of their claims and Defendants do not present evidence that Plaintiffs brought suit for an "improper purpose."[7] Plaintiffs' motion for

---

[6] Rule 11(c)(2) states:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

[7] Rule 11(b) states:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> 1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> 2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

partial summary judgment is therefore **GRANTED** as to Defendants'
counterclaim.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary
judgment, dkt. no. 24, is **DENIED** as to all Plaintiffs' claims.
Plaintiffs' partial motion for summary judgment, dkt. no. 31, is
**DENIED** as to Defendants' liability for Plaintiffs' fraud and
negligent misrepresentation claims and **GRANTED** as to Defendants'
malicious prosecution counterclaim.  The parties are **ORDERED** to
file a consolidated proposed pretrial order within **twenty-one (21)
days** of the date of this Order.  Further, a pretrial conference
will be held on Tuesday, October 3, 2023 at 10 a.m., and a jury
trial will commence Tuesday, October 24, 2023 at 9 a.m., both at
the federal courthouse in Waycross, Georgia.

**SO ORDERED** this 16th day of August, 2023.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

3) the factual contentions have evidentiary support or,
   if specifically so identified, will likely have
   evidentiary support after a reasonable opportunity
   for further investigation or discovery; and

4) the denials of factual contentions are warranted on
   the evidence or, if specifically so identified, are
   reasonably based on belief or a lack of information.